IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:   SWIFT STAFFING HOLDINGS, LLC                    CHAPTER 11
         Debtor                                          CASE NO. 18-10616

## MOTION TO EXPEDITE HEARING

COMES NOW Swift Staffing Holdings, LLC (the "Debtor"), and files this its Motion to Expedite Hearing (the "Motion"), and in support thereof, would respectfully show as follows, to-wit:

1. Debtor has filed the attached Emergency Motion to Approve Management/Payroll Agreement (the "Emergency Motion"), marked as **Exhibit "A"** and incorporated by reference.

2. Funding of the Debtor's existing payroll, as well as the payroll from the prior week, is an emergency, critical issue in this case because the Debtor's core business is that of supplying staffing and employees to its customers. In the absence of the funding of the Debtor's payroll, it will have no employees with which to staff its customers and this case will be a failure, to the detriment of all creditors, all parties in interest and, especially, to the Debtor's employees.

3. Accordingly, an urgent and emergency situation exists, justifying the Court in setting the Motion on an emergency basis in order to grant the relief requested therein and fund the Debtor's payroll.

4. Debtor suggests that the Emergency Motion can be heard on Monday, February 26, 2018.

5. Other grounds to be assigned upon a hearing hereof.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully prays that upon a hearing hereof, this Honorable Court will enter its order granting the Motion and entering an order expediting a hearing on the Emergency Motion. The Debtor prays for general relief.

DATED, this the ~~2nd~~ day of February, 2018.

        Respectfully submitted,

        SWIFT STAFFING HOLDINGS, LLC

        By Its Attorneys

        LAW OFFICES OF CRAIG M. GENO, PLLC

        By: _____
             Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Jarret P. Nichols; MSB No. 99426
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
jnichols@cmgenolaw.com

N:\Firm Data\Users\Bankrupt\Swift Staffing\Swift Staffing Holdings\Pleadings\M to Expedite Hrg re M to Approve Management Agreement 2-21-18.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission and/or U. S. Mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

Sammye S. Tharp, Esq.
Office of the United States Trustee
Sammye.S.Tharp@usdoj.gov

THIS, the 21st day of February, 2018.

_____
Craig M. Geno

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:   SWIFT STAFFING HOLDINGS, LLC                           CHAPTER 11
         Debtor                                                  CASE NO. 18-10616

## EMERGENCY MOTION TO APPROVE MANAGEMENT/PAYROLL AGREEMENT

COMES NOW Swift Staffing Holdings, LLC (the "Movant"), and files this its Emergency Motion to Approve Management/Payroll Agreement and in support thereof would respectfully show as follows, to-wit:

1. This case was initiated by the filing of a voluntary petition (the "Petition") pursuant to Chapter 11 of the Bankruptcy Code on the 21st day of February, 2018. Subsequent thereto, Movant has been, and is, the duly qualified, and acting, debtor-in-possession in this Chapter 11 case.

2. This Honorable Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. § 157 and 1334; 11 U.S.C. § 105, 363, 541, 1107, related statutes, related rules and various orders of reference. This is a core proceeding.

3. Movant, and its affiliates, are "staffing" companies in that they provide temporary, and sometimes permanent, workforce employees to the customers of the Movant.

4. Prior to the filing of the Petition, Movant, and its affiliates, encountered significant difficulties in obtaining, and/or maintaining, workers' compensation insurance for its employees.

5. In order to provide workers' compensation insurance, Movant has entered into a contract with Diverse Staffing Services, Inc. ("Diverse") for the funding of payroll, providing of workers' compensation insurance and related support. A copy of the management/payroll agreement (the "Agreement") is attached, incorporated by reference and marked as **Exhibit "A"**.

6. Among other things, the Agreement provides that Diverse will fund the Movant's (and its affiliates') payroll, provide workers' compensation insurance and related support. This will

EXHIBIT
"A"

allow Movant to remain as a viable, acting staffing company and continue to provide employees to its customers.

7. In exchange, in part, for Diverse providing payroll funding and related support services, Movant has agreed to assign, directly and as collateral, its accounts receivable generated subsequent to the execution of the Agreement to Diverse. In the absence of such an assignment/collateralization, Diverse is unwilling to fund payroll and provide workers' compensation insurance to the Movant and its affiliates.

8. Further, Diverse has agreed to serve as the stalking horse in connection with the purchase of substantially all of the assets of Movant and its affiliates. Due to the emergency nature of this filing, Movant has not yet prepared, or filed, its motion for authority to sell substantially all of its assets to Diverse, but that motion will be forthcoming in the immediate future. In the meantime, the Agreement, and Diverse's funding of it, will preserve the going concern value of the Movant and its affiliates and will provide a level of comfort to Movant's customers that employees, adequately funded and provided with workers' compensation insurance, will continue to be available pending the sale of assets to Diverse.

9. The Agreement is the result of extensive, arms length negotiation and bargaining, during which Movant and its affiliates on the one hand, and Diverse on the other hand, acted in good faith. Diverse is not an insider of the Movant, or its affiliates, and has no relationship with the Movant or its affiliates other than as indicated by the Agreement and the forthcoming sale of assets from Movant to Diverse.

10. Approval of the Agreement is in the best interest of the Debtor, all creditors and all parties in interest and it will further the goals in this Chapter 11 case.

11. Other grounds to be assigned upon a hearing hereof.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully prays that upon a hearing hereof this Honorable Court will enter its order granting the Motion and approving the Agreement. The Debtor prays for general relief.

This, the ____21st____ day of February, 2018.

Respectfully submitted,

SWIFT STAFFING HOLDINGS, LLC

By Its Attorneys,

LAW OFFICES OF CRAIG M. GENO, PLLC

By_____/s/ Craig M. Geno_____
Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Jarret P. Nichols; MSB No. 99426
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
jnichols@cmgenolaw.com

N:\Firm Data\Users\Bankrupt\Swift Staffing\Swift Staffing Holdings\Pleadings\M to Approve Management,Payroll Agreement 2-21-18.wpd

-3-

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission, a true and correct copy of the above and foregoing to the following:

Sammye S. Tharp, Esq.
Sammye.S.Tharp@usdoj.gov

THIS, the _2nd_ day of February, 2018.

_____
Craig M. Geno

# MANAGEMENT AGREEMENT

**PARTIES**

This Agreement is entered into this 11th day of February 2018, by and between **Diverse Staffing Services, Inc.**, its successors and assigns, hereafter referred to as "DIVERSE"), and **Swift Staffing Holdings, LLC and all affiliates**, (hereafter referred to as "Client"), whose respective addresses are set forth on the signature page of this Agreement.

**I. TERM OF AGREEMENT**

A. The initial term of this Agreement shall be for thirty days (the "Initial Term"). Following the completion of the Initial Term, this Agreement shall automatically renew and remain in full force and effect for additional terms of thirty (30) days and shall remain in effect until either party gives written notice to the other party by delivering notice of termination as specified in Section XII, below, at least five (5) days prior to the expiration of the Initial Term or any extension of the Initial Term. In addition, DIVERSE may at any time immediately terminate this Agreement or withhold its employees' services in the event of breach by Client of any of the terms of this Agreement or upon the occurrence of any of the events set forth in Section XI below. Termination or expiration of this Agreement shall not affect the continuation of any outstanding obligation or liability incurred by either party during the term of this Agreement.

Client agrees it will comply with Worker Adjustment and Retraining Notification Act ("WARN") and that it will give DIVERSE at least sixty-two (62) days' notice prior to effecting any plant closing or mass lay-off as defined in WARN.

**II. SERVICES**

A. DIVERSE agrees to furnish to Client employees to perform job functions identified by workers' compensation code classifications. Client warrants that the list of workers' compensation classifications is accurate and complete and that employees performing these job functions do so at the location specified in this Agreement as Client's address. Client understands and agrees that prior written approval from DIVERSE' workers' compensation carrier must be obtained prior to the addition of any workers' compensation classification.

B. Client expressly agrees and understands that no employee shall become employed by DIVERSE, covered by DIVERSE' workers' compensation insurance or any other benefit or term and condition of employment, or issued a payroll check, unless the individual has completed a Form I-9 and W-4 withholding form on file with Client.

C. DIVERSE shall have sufficient authority so as to maintain a right of direction and control over leased employees assigned to Client's location, and shall retain authority to hire, terminate, discipline and reassign leased employees. Client shall, however, retain such sufficient direction and control over the leased employees as is necessary to conduct Client's business and without which Client would be unable to conduct its business, discharge any fiduciary responsibility that it may have, or comply with any applicable licensure, regulatory, or statutory requirement of Client. Such authority maintained by Client shall include the right to accept or cancel the assignment of any leased employee.

Additionally, Client shall have sole and exclusive control over the day-to-day job duties of all leased employees and DIVERSE shall have no responsibilities with regard to the leased employees' performance of such day-to-day job duties. Furthermore, DIVERSE shall have no control over the job site at which, or from which, leased employees perform their services. Control over the day-to-day job duties of leased employees and over the job site at which, or from which, leased employees perform their services is solely and exclusively assigned to Client. Client expressly absolves DIVERSE of control over the day to day job duties of the leased employees and over the job site at which, or from which, leased employees perform their services. DIVERSE assumes responsibility for the payment of wages to the


EXHIBIT "A"

leased employees without regard to payments by Client to DIVERSE and DIVERSE assumes full responsibility for the payment of payroll taxes and collection of taxes from payroll on leased employees.

In the event Client does not pay DIVERSE for all services rendered, DIVERSE may pay leased employees at the minimum wage rate or minimum salary provided for in the Fair Labor Standards Act. This provision in no way affects the obligation of Client to pay DIVERSE for all services rendered and in no way affects the obligations of Client pursuant to state and federal law, including but not limited to the requirement to pay all leased employees their regular rate of pay. DIVERSE will give written notice of the relationship between DIVERSE and Client to each leased employee it assigns to perform services for Client. DIVERSE does not assume any responsibility for and makes no assurances, warranties, or guarantees as to the ability or competence of any leased employee. This Agreement in no way alters any responsibilities of Client which arise from Mississippi Statutes and Client assumes all responsibilities, including, but not limited to, responsibility to perform any and all work history, reference checks and background checks on leased employees.

D. If any leased employee is required to be licensed, registered or certified under any federal, state, or municipal law or regulation, or to act under the supervision of such a licensed, registered or certified person or entity in performing the employee services, then any such leased employee shall be deemed to be an employee of Client for such licensure purposes. Client shall also be solely responsible for verifying such licensure and/or providing such required supervision.

E. Client agrees to provide all facilities, supplies, equipment, and all other necessary items that may be required by employees to perform their employee services.

### III. WORKERS' COMPENSATION

A. DIVERSE shall secure workers' compensation coverage in such amounts as is required by applicable law and shall be responsible for the management of workers' compensation claims, claims filings and related procedures for its leased employees for services which they perform as leased employees. Should Client be allowed to maintain its own workers' compensation policy, DIVERSE shall be named as an additional insured on such policy or policies. In addition, in such situations where Client maintains its own workers' compensation policy, and where allowed by law, Client shall at no time directly pay any workers' compensation premiums but shall instead, at least fourteen (14) days prior to the premium due date, remit to DIVERSE by overnight mail, next day delivery service, a cashier's check sufficient to cover the premium due from Client in order for DIVERSE to submit these funds to the carrier. DIVERSE shall have no responsibility in such situations where Client retains its own workers' compensation policy other than to remit to the carrier such payments as Client forwards to DIVERSE.

B. While DIVERSE shall retain a right of direction and control over the management of safety, risk and hazard control involving leased employees performing work at Client work sites, as may be required by applicable state and federal laws, compliance with all applicable laws related to such matters is a responsibility of Client. Client acknowledges that it is responsible to maintain a safe working environment, provide proper training in compliance with state and federal OSHA standards, and establish and maintain such safety programs, safety policies, and safety committees as may be required by law or by DIVERSE. DIVERSE shall provide such assistance and maintain such responsibility for performing safety inspections of Client equipment and premises and assistance and responsibility for the promulgation and administration of employment and safety policies as is required by applicable law; however, Client acknowledges that DIVERSE in either providing or not providing such assistance and responsibility assumes no liability. Client further agrees to comply with any DIVERSE workers' compensation light duty requirements as directed by DIVERSE, including reinstatement of employees in a light duty capacity, and shall comply with such Drug Free Workplace Act policies, if any, as may be implemented by DIVERSE.

C. Client represents that its working environment, equipment, machinery, supplies and training for existing employees currently meet all state and federal OSHA standards and that they will be maintained in compliance with such standards during the duration of this Agreement. Client shall provide and ensure

use of all personal protection gear and equipment, as required by law, or as deemed necessary by DIVERSE or DIVERSE' workers' compensation carrier.

D. In the event Client or any leased employee fails to notify DIVERSE within FORTY-EIGHT (48) hours following a work-related accident or injury, Client shall immediately reimburse DIVERSE for any fees, penalties, or expenses imposed upon or incurred by DIVERSE.

E. Client shall remain liable for all workers compensation expenses arising from injuries prior to effective date of this Management Agreement.

## IV. EMPLOYER PRACTICES LIABILITY INSURANCE

A. As of the date of this Agreement, DIVERSE has secured Employer Practices Liability Insurance (EPLI) that provides coverage for certain employment-related claims. Nothing in this Agreement is intended to create rights to insurance in addition to the terms of such insurance policy. To the extent the provisions of this Agreement conflict with such policy, the provisions of the EPLI shall control. In the event EPLI becomes unavailable on terms acceptable to DIVERSE (in DIVERSE' sole discretion), the Client will be notified of the cancellation of such insurance in accordance with the terms of the insurance policy.

B. The EPLI shall not cover any claim or cause of action that arose or existed prior to the effective date of this Agreement and neither DIVERSE, nor any insurer, shall be obligated to pay for any defense of such claim or cause of action or otherwise participate financially in the resolution of such claim.

C. The EPLI has a retention amount that the Client must pay before the insurance carrier is obligated to make any payment. On claims covered by such EPLI, Client agrees to pay the total retention amount due pursuant to the EPLI policy. In addition, Client agrees:

>  (i) To act in conformity with the terms of the EPLI and with the terms of this Agreement;
>  (ii) To cooperate with DIVERSE in the investigation of proceeding of such claim;
>  (iii) To settle or compromise such claims upon the terms and conditions satisfactory to DIVERSE; and
>  (iv) This Agreement must remain in effect and not be terminated by either the Client or DIVERSE (without good cause) for a one (1) year period following the resolution of any claim under the EPLI.

## V. BENEFIT PLANS

A. Client acknowledges that DIVERSE has available employee benefit plans for the possible application to employees. Any other employee benefit plans maintained by Client, regardless of whether they provide benefits to the employees, shall be the sole responsibility of Client. All benefit plans shall be subject to the terms and conditions of eligibility and to such modifications as may occur to such plans. DIVERSE reserves the right to change any benefit plan which it offers to leased employees (including the right to change carriers) and to raise the rates charged for such benefit plans. Following any increase in rates or change in any benefit plan being offered to leased employees, Client may terminate this Agreement within fourteen (14) days of its receipt from DIVERSE or its applicable carrier or benefit plan administrator of notification of an increase in rates or a change in any benefit plan.

B. To assure compliance with the Internal Revenue Code, the Employee Retirement Income Security Act and other federal regulations, Client agrees to properly disclose to DIVERSE all information reasonably required by DIVERSE for the proper administration of its benefit plans. This includes, without limitation, certification by Client that it has disclosed to DIVERSE all information requested by DIVERSE in any benefit plan questionnaires including the following information: (1) any retirement plans currently or previously maintained by the adopting company or any related entities (within the meaning of the Internal Revenue Code Section 414, including 414(b), 414(c), 414(m) or 414(o); (2) listed all of the owners, officers and shareholders (to identify those highly compensated and key employees for purpose

of discrimination and top-heavy testing); (3) listed/entered any family relationships for owners, officers and shareholders with co-employees. In the event that Client has failed to properly identify and/or properly complete any benefit plan questionnaire, Client agrees to indemnify DIVERSE Indemnified Parties for any and all liability associated therein.

Prior to Client merging its plan into the qualified DIVERSE Retirement Plan, or prior to Client transferring assets from its qualified plan into the DIVERSE Retirement Plan, Client understands and agrees that DIVERSE shall have the right to inspect all plan documents, records, IRS determinations, etc. for compliance with the law.

If Client maintained a plan during the plan year (January 1 through December 31) prior to contracting with DIVERSE, Client agrees to provide DIVERSE with all required information (including but not limited to Box I wage and employee deferrals, employer matches, and contributions, etc.), prior to contracting with DIVERSE so that DIVERSE may conduct discrimination testing on a combined basis for the first plan year.

Client agrees that in the event the DIVERSE Retirement Plan as adopted by the Client plan becomes top heavy as defined by the prevailing Internal Revenue Code and/or regulations, Client will be solely responsible for making a contribution to non-key employees assigned to it to satisfy the top-heavy test. Client acknowledges that it is solely responsible for any matching, non-elective, or qualified non-elective contributions to be made to the DIVERSE plan on behalf of the Client's co-employees.

If Client adopts the DIVERSE Plan, Client acknowledges that it has reviewed the adoption agreement for the DIVERSE Plan and agrees to comply with all of the obligations and responsibilities set forth in the terms of said adoption agreement.

In addition, Client further warrants that no covered employee will receive compensation originating from Client that will not be paid directly by DIVERSE. Client understands that any payment made to any leased employee outside this Agreement may result in the DIVERSE Retirement Plan being disqualified. Should the DIVERSE Retirement Plan be disqualified as a result of the Client failing to report any compensation to covered employees, Client will be solely liable for any damages of any nature arising out of the failure to report such compensation to DIVERSE.

Client also understands and agrees that if this Agreement is terminated and the Client does not adopt a successor retirement plan and arrange for a transfer of assets from DIVERSE retirement plan within one hundred and twenty (120) days of the termination date, all leased employees covered under DIVERSE retirement plan will become fully vested in their account balances. Furthermore, CLIENT agrees to reimburse DIVERSE an administrative fee in the amount of $300 per annum or any part thereof plus $25 per leased employee per annum or any part thereof for administering this provision.

## VI. SERVICE FEES

A. For services to be rendered under this Agreement, DIVERSE shall be entitled to a service fee (FEE) equal to twenty-five percent (25%) of the Gross Payroll paid each week to both internal staff and external employees placed at Customers. DIVERSE shall collect all invoice payments from Customers directly and will withhold such FEE and remit difference to Client once Customers have paid each invoice in full and DIVERSE has received payment in full for associated FEEs.

DIVERSE shall have first position on all Accounts Receivable from February 18, 2018, and in the event, Client receives payment from Customers for any invoices dated after effective date of agreement, Client agrees to forward full payment within one (1) business day and provide notice to DIVERSE.

B. Should Client require additional services not included in this Agreement, the fee for any such additional services shall be negotiated and paid separately. The fees set forth on Exhibit A are subject to adjustment by DIVERSE based upon changes in local, state and/or federal employment law, changes in insurance requirements or costs, costs directly attributable to Client or to leased employees assigned to Client, or

changes in Client's payroll. Upon written notification to Client from DIVERSE of a fee adjustment, Client shall have the right to terminate this Agreement by giving notice of termination to DIVERSE within fourteen (14) days after receipt from DIVERSE of a notice of a fee adjustment, and after payment of all funds owed to DIVERSE by Client.

## VII. LIMIT OF SERVICES

DIVERSE will only provide the above listed services and no other services shall be provided or implied, including without limitation any strategic, operational or other business-related decisions with regard to Client's business. Such decisions shall exclusively be the responsibility of Client and DIVERSE shall bear no responsibility nor liability for any actions or inactions by Client. When implementing such decisions, whether or not the actions are implemented by leased employees, Client shall be acting solely on its own volition and responsibility. If DIVERSE is leasing any supervisory employees to Client, such supervisory employees' scope of employment is strictly limited. Supervisors' actions which are in violation of law or which result in liability will be outside the scope of their responsibility as DIVERSE leased employees and in such event supervisory employees will be acting solely as the agents of Client.

## VIII. INDEMNIFICATIONS

A. Client will provide proof of comprehensive general liability insurance coverage for its operations and all employees, with a minimum limit of liability not less than one million ($1,000,000.00) dollars per occurrence. If any leased employee will operate a vehicle owned or otherwise of any kind for Client, Client shall furnish liability insurance therefor against liability for bodily injury and property damage and against uninsured motorists, each with a minimum limit of liability not less than one million ($1,000,000.00) dollars. Such policies shall also include blanket collateral liability and personal injury liability coverage. In addition, if professional employees are leased, professional liability coverage will be secured and maintained by Client with a limit of liability of not less than one million ($1,000,000.00) dollars. Client agrees, at its own expense, to include DIVERSE as an additional named insured on all of Client's insurance policies, including without limitation professional liability policies and fidelity bonds. Client shall at the request of DIVERSE deliver to DIVERSE a certificate evidencing such insurance and the agreement(s) of the insurer(s) that such insurance may not be cancelled without twenty (20) days prior notice to DIVERSE. Any protection against the dishonest or criminal conduct or misappropriation of any funds engaged in by any employee maintained hereunder, such as fidelity bonding, shall be at Client's expense. All insurance policies shall waive Client's subrogation rights in favor of DIVERSE. Client's obligation under this Section shall survive termination or expiration of this Agreement.

B. Without regard to the fault or negligence of any party, Client hereby unconditionally indemnifies, holds harmless, protects and defends DIVERSE, and all subsidiary, affiliate, related, and parent companies, their current and former respective shareholders, non-leased employees, attorneys, officers, directors, agents and representatives (all indemnified parties referred to as "DIVERSE Indemnified Parties") from and against any and all claims, demands, damages (including liquidated, punitive and compensatory), injuries, deaths, actions and causes of actions, costs and expenses (including attorney's fees and expenses at all levels of proceedings), losses and liabilities of whatever nature (including liability to third parties), and all other consequences of any sort, whether known or unknown, without limit and without regard to the cause or causes thereof or the negligence of DIVERSE or any DIVERSE Indemnified Party, that may be asserted or brought against any DIVERSE Indemnified Party which is in any way related to this Agreement, the products or services provided by Client or by DIVERSE, the actions of any leased employee, the actions of any non-leased employee employed by Client, or of any other individual, including without limitation, any violation of any local, state and/or federal law, regulation, ordinance, directive or rule whatsoever, and all employment-related matters which shall include but not be limited to all matters arising under local, state and/or federal right-to-know laws, environmental laws, all laws within the jurisdiction of the NLRB, OSHA, and EEOC, including Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act (including without limitation those aspects relating to employment, public access and public accommodation), the WARN Act, ERISA, all laws governing wages and hours (including without limitation: prevailing wage rate; exempt and non-exempt status; child labor; and minimum wage and overtime matters), all laws governing race, sex, sexual

harassment, retaliation, religion, national origin, color, age, veteran status, disability, and marital status, all laws governing disclosed and undisclosed benefit plans, and all other labor laws.

C. DIVERSE hereby unconditionally indemnifies, holds harmless, protects and defends Client, and all subsidiary, affiliate and parent companies, their shareholders, employees, attorneys, officers, directors, agents and representatives from and against any and all claims, demands, damages, injuries, deaths, actions, costs and expenses (including attorney's fees and expenses at all levels of proceedings), losses and liabilities of whatever nature (including liability to third parties), and other consequences of any sort, arising out of the negligent or willful failure of any non-leased employee employed by DIVERSE at its corporate office to comply with applicable workers' compensation, withholding tax, or ERISA laws, rules and regulations or where any action is taken by Client in compliance with a written corporate DIVERSE policy, procedure, or direction which is illegal under any applicable local, state or federal law.

D. All indemnifications are and shall be deemed to be contractual in nature and shall survive the termination or expiration of this Agreement.

### IX. GOVERNMENT INVESTIGATIONS/LEGAL ACTIONS/INQUIRIES

A. Client acknowledges that it is essential to DIVERSE' performance under this Agreement that DIVERSE have complete knowledge of any government investigation or inquiry or private adversary action which could in any manner impact upon the types of duties contemplated by this Agreement. For example, but not by limitation, an audit by the Bureau of Workers' Compensation could affect the performance of functions under this Agreement. Thus, Client has provided to DIVERSE, prior to entering into this Agreement, full and complete disclosure, in writing, of any such administrative proceeding (including but not limited to EEOC, NLRB, OSHA, and Wage and Hour matters), investigation, lawsuit, or other adversary proceeding, including those which are threatened as well as those not yet asserted, in which Client has been involved during the last five (5) years.

B. DIVERSE shall not be considered to be an employer with any liability regarding leased employees for purposes of claims of discrimination involving disability, race, sex, sexual harassment, religion, color, age, national origin, marital status, veteran status, retaliation, or for any other claim pursuant to any local, state or federal law regulation, or ordinance unless the action is taken by Client in compliance with a written corporate DIVERSE policy, procedure, or corporate direction, which is illegal under any applicable local, state or federal law.

C. Client represents that there are no union employees at the Client work-site, that there are no collective bargaining representatives for the leased employees, and that there are no applicable collective bargaining agreements with any labor organization.

### X. CLIENT OBLIGATIONS AND RIGHTS

A. Client has the right to accept or cancel the assignment of any leased employee. Client agrees that in making such decisions it will at all times comply with all applicable laws. Client further agrees that it will at all times comply with the Family and Medical Leave Act ("FMLA") and Client's responsibilities to reinstate employees and in all other manner to comply with the FMLA shall survive termination or expiration of this Agreement.

B. Client agrees that it will obtain and provide to DIVERSE at the end of each pay period records of actual time worked by each employee, verify their exempt or non-exempt status, and that all hours worked by employees are reported to DIVERSE, and that they are accurate and are in accordance with the requirements of the Fair Labor Standards Act and other laws administered by the U.S. Department of Labor's Wage and Hour Division and any applicable state law. These records submitted to DIVERSE shall become the basis for DIVERSE to issue all payroll checks. DIVERSE shall not be responsible for incorrect, improper or fraudulent records of hours worked, or for improper determination of exempt status. Should Client fail to meet the processing and payment schedule, the delivery of payroll checks by DIVERSE will be delayed and an out-of-cycle processing charge could be billed to Client at DIVERSE' option. Similarly, any changes to the hours reported to DIVERSE after the reporting time could be

subject to an out-of-cycle check charge at DIVERSE' option.

C. Upon termination or expiration of this Agreement, Client shall assume sole responsibility for all accumulated, but unused, sick leave and vacation time for leased employees.

## XI. EFFECT OF TERMINATION

A. If for any reason payment is not made when due, Client agrees that DIVERSE will have the right to immediately terminate its performance hereunder, withhold its employees' services, and/or bring suit seeking damages.

Upon termination or expiration of this Agreement, for any reason, or should Client fail to timely pay DIVERSE for its services, all of the employees shall be deemed to have been laid off by DIVERSE and immediate notification of this shall be provided by Client to employees who had been leased pursuant to this Agreement. Client shall immediately assume all federal, state and local obligations of an employer to the employees which are not in conflict with state or federal law and shall immediately assume full responsibility for providing workers' compensation coverage. DIVERSE shall immediately be released from such obligations as are permitted by law. It is the intent of the parties that, where allowed by law, they be placed in their respective positions immediately before their entry into this Agreement in the event of a termination or expiration or Client's failure to pay DIVERSE. If for any reason (whether or not required by applicable law) DIVERSE makes any payment to any of the employees after this Agreement has been terminated, DIVERSE shall be entitled to full reimbursement for such expenditures.

B. DIVERSE may also terminate this Agreement if, at any time, DIVERSE in its sole discretion Determines, in good faith, that a material adverse change has occurred in the financial condition of Client, or that Client is unable to pay its debts as they become due in the ordinary course of business. Provided, however, that the filing of a Chapter 11 Bankruptcy case my client, or any of its affiliates, is not a material adverse change. This Agreement may also be terminated at any time by DIVERSE in the event of any federal, state, or local legislation, regulatory action, or judicial decision which, in the sole discretion of DIVERSE, adversely affects its interest under this Agreement. Such termination or expiration shall not relieve Client of any obligation set forth herein, including but not limited to its payment obligations to DIVERSE.

## XII. GENERAL PROVISIONS

A. Client acknowledges that it has not been induced to enter into this Agreement by any representation or warranty not set forth in this Agreement, including but not limited to any statement made by any marketing agent of DIVERSE. Client acknowledges that DIVERSE has made no representation concerning whether DIVERSE's services will improve the performance of Client's business.

B. In no event will DIVERSE be liable for any indirect, incidental or consequential damages to Client as a result of a breach of this Agreement nor for any loss of business, goodwill, profits or other damages.

C. This Agreement is assignable by DIVERSE at its sole discretion.

D. Client acknowledges and agrees that DIVERSE is not engaged in the practice of law or the provision of legal services, and that Client alone is completely and independently responsible for its own legal rights and obligations.

E. This Agreement constitutes the entire agreement between the parties with regard to this subject matter and no other agreement, statement, promise or practice between the parties relating to the subject matter shall be binding on the parties. This Agreement may be changed only by a written amendment signed by both parties.

F. The failure by either party at any time to require strict performance by the other party or to claim a breach of any provision of this Agreement will not be construed as a waiver of any subsequent breach nor

affect the effectiveness of this Agreement, or any part thereof, or prejudice either party as regards to any subsequent action.

G. This Agreement shall be governed by and construed in accordance with the laws of the State of Mississippi and venue shall be in the applicable court in Mississippi.

H. In the event of any lawsuit or other proceeding to enforce the provisions of this Agreement, the prevailing party shall be entitled to an award of its costs and reasonable attorney's fees incurred at all levels of proceedings.

I. Any notice or demand given hereunder shall be accomplished by the personal delivery in writing (with written receipt) or by other delivery with proof of delivery or attempted delivery to the address set forth herein for the other party and shall be deemed effective upon proof of attempted delivery (actual delivery to be made as soon as is practicable following attempted delivery).

J. No rights of any third party are created by this Agreement and no person not a party to this Agreement may rely on any aspect of this Agreement notwithstanding any representation, written or oral, to the contrary.

K. In the event that any provision contained in this Agreement is held to be unenforceable by a court of competent jurisdiction, the validity, legality, or enforceability of the remainder of this Agreement shall in no way be affected or impaired thereby.

L. DIVERSE will notify all leased employees of this Agreement at inception and termination or expiration of Agreement. Client shall also immediately upon termination or expiration of this Agreement notify all employees of the termination or expiration of this Agreement and inform them that they are no longer covered by DIVERSE' workers' compensation policy.

M. Any false statement or omission with regard to any information supplied by Client to DIVERSE in anticipation of Client's contracting with DIVERSE or at any other time shall be deemed a material breach of this Agreement and DIVERSE, at its option, may terminate this Agreement and seek appropriate relief.

N. Any and all inventions, discoveries, improvements, copyrightable works and creations (hereafter referred to as "Intellectual Property") which Client has previously, solely or jointly, conceived or made or may conceive or make during the period of this Agreement, whether or not accomplished through the use of leased employees, shall be the sole and exclusive property of Client. Client shall have sole and exclusive responsibility for protecting its rights to such Intellectual Property and to all of its other assets and DIVERSE shall have no responsibility with regard to same.

O. Any responsibility and/or liability with regard to any employment contract between Client and any employee leased to Client's work-site shall be the exclusive responsibility and/or liability of Client and DIVERSE shall not be a party to any such agreement. DIVERSE will have no responsibility nor liability in connection with or arising out of any such employment contract except to prepare checks and to pay any such employee who is a party to such a contract, in conformity with information provided by Client. With respect to any employment contract between Client and any employee leased to Client's work-site, Client shall be acting solely on its own volition and responsibility with regard to all aspects of any such contract, including but not limited to its negotiation, compliance, implementation, renewal, enforcement, and termination.

P. Complaints, allegations or incidents of any tortious misconduct or workplace safety violations, regardless of the source, must be reported by Client to DIVERSE immediately upon becoming known to Client.

Q. Client may not assign this Agreement nor its rights and duties hereunder, nor any interest herein, without the prior written consent of DIVERSE. Client will provide at least fourteen (14) days prior written notice to DIVERSE of any sale of Client. Where DIVERSE agrees in writing to a successor becoming

obligated to comply with this Agreement, this Agreement may be terminated by DIVERSE at any time in DIVERSE' sole discretion during the first sixty (60) days following successor's assumption of this Agreement. Thereafter, this Agreement may only be terminated by DIVERSE in conformity with the terms of this Agreement.

R. This Agreement shall be valid and enforceable only upon signature by an authorized Controlling Person of DIVERSE. Any individual signing this Agreement on behalf of Client represents, warrants and guarantees that she or he has full authority to do so. Each party represents that it has the power and actual authority to enter into this Agreement and to be bound by the conditions and terms contained herein.

S. In recognition of the effort that is necessary to provide the services described in this Agreement, DIVERSE and Client agree to cooperate with each other. This duty to cooperate shall encompass the obligation of the other party to timely supply documents, witnesses and such other evidence as is necessary for a party to properly fulfill its obligations under this Agreement. In addition, Client shall permit DIVERSE and/or its workers' compensation carrier access during normal working hours, upon reasonable notice to Client, to any Client Work Location at which, or from which, work-site employees perform work. Such access shall include the ability of DIVERSE and/or its workers' compensation carrier to examine books and records of Client deemed appropriate by DIVERSE or its workers' compensation carrier in order to determine compliance with this Agreement.

T. Client understands that pursuant to Mississippi law, it may not enter into an employee leasing relationship with DIVERSE if Client owes a current or prior employee leasing company any money pursuant to any service agreement which existed between that current or prior employee leasing company and Client, or if Client owes a current or prior insurer any premium for workers' compensation insurance. Client has met any and all prior premium and fee obligations with regard to workers' compensation premiums and employee leasing payments.

U. Upon any request by DIVERSE or its assigns, Client shall allow an on-site physical examination of such books, records, documents and other information sources deemed appropriate by DIVERSE and/or its assigns to aid DIVERSE and its assigns in the determination of proper workers' compensation classifications of leased employees and to aid in the determination of payroll amounts paid to such leased employees to the extent set forth in Mississippi Statutes, and the rules promulgated thereunder. Such examination shall be strictly for the purposes of determining proper workers' compensation classifications of leased employees and to aid in the determination of payroll amounts paid to such leased employees. Client shall remain obligated to DIVERSE for any delinquency and/or unpaid premium amount found in the audit. This provision shall survive the expiration or termination of this Agreement.

V. With respect to any dispute concerning the meaning of this Agreement, this Agreement shall be interpreted as a whole with reference to its relevant provisions and in accordance with its fair meaning, and no part of this Agreement shall be construed against DIVERSE on the basis that DIVERSE drafted it. This Agreement shall be viewed as if prepared jointly by DIVERSE and Client.

**Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true. In addition, the foregoing Agreement is agreed to.**

**Swift Staffing Holdings, LLC; Swift Staffing Alabama, LLC; Swift Staffing Arkansas, LLC; Swift Staffing Florida, LLC; Swift Staffing Georgia, LLC; Swift Staffing Mississippi, LLC; Swift Staffing North Carolina, LLC; Swift Staffing Pennsylvania, LLC; Swift Staffing Tennessee, LLC; Rockhill Staffing Texas, LLC**

By: *[signature]*

Date: 02/13/2018

Name: Rodney C. Dial

431 West Main Street, Suite 400, Tupelo, MS 38804
Address

900916749
FEIN

Diverse Staffing Services, Inc.

By: _____

Date: 2-13-18

Name: George D. Apgar
6325 Digital Way, Suite 100, Indianapolis, Indiana, 46278
35-2076286