IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:    SWIFT STAFFING HOLDINGS, LLC[1]                    CHAPTER 11
          Debtor                                              CASE NO. 18-10616-JDW

**MOTION TO SELL SUBSTANTIALLY ALL OF THE ASSETS
FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS,
WITH LIENS ATTACHING TO PROCEEDS OF SALE, OUTSIDE
THE ORDINARY COURSE OF BUSINESS**

COMES NOW Swift Staffing Holdings, LLC (the "Movant" or the "Debtor") and files this, its *Motion to Sell Substantially All of the Assets Free and Clear of Liens, Claims and Interests, with Liens Attaching to Proceeds of Sale, Outside the Ordinary Course of Business* (the "Motion"), and in support thereof would respectfully show as follows, to-wit:

**INTRODUCTION AND BACKGROUND**

1.    This case was initiated by the filing of a voluntary petition (the "Petition") pursuant to Chapter 11 of the Bankruptcy Code on the 21st day of February, 2018. Subsequent thereto, Movant has been, and is, the duly qualified, and acting, debtor-in-possession in this Chapter 11 case. The Debtor is in control of its assets and is managing and operating the Debtor-in-Possession's businesses.

2.    This Honorable Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 105, 363, 365, 503, 507, 1107, related statutes, related rules and various orders of reference. This is a core proceeding.

---

[1] On February 27, 2018, the bankruptcy cases of *Swift Staffing Arkansas, LLC* (Case No. 18-10626-JDW), *Swift Staffing Alabama, LLC* (Case No. 18-10627-JDW), *Swift Staffing Georgia, LLC* (Case No. 18-10628-JDW), *Swift Staffing North Carolina, LLC* (Case No. 18-10629-JDW), *Swift Staffing Florida, LLC* (Case No. 18-10630-JDW), *Swift Staffing Mississippi, LLC* (Case No. 18-10631-JDW), *Swift Staffing Tennessee, LLC* (Case No. 18-10632-JDW), *Swift Staffing Pennsylvania, LLC* (Case No. 18-10633-JDW), and *Rockhill Staffing Texas, LLC* (Case No. 18-10634-JDW) were administratively consolidated into the bankruptcy cases of *Swift Staffing Holdings, LLC* (Case No. 18-10616-JDW). All of these cases are hereinafter referred to collectively as "the Debtor".

3. The Debtor operates a "staffing" company wherein it provides employees to its customers for different lengths of time.

4. Recently, Debtor encountered financial challenges to the extent that it could not obtain, or pay for, workers' compensation insurance on a regular basis. As a result, it initiated this Chapter 11 case and has obtained an order from the Court **[DK #23]** (the "Order Approving Service Agreement") whereby Diverse Staffing Services, Inc. ("Diverse") agreed to provide funding for Debtor's payroll and to place into effect workers' compensation insurance coverage for Debtor's employees. A copy of the Order Approving Service Agreement is attached, incorporated by reference and marked as **Exhibit "A"**.

5. As the Order Approving Service Agreement notes, not only is Diverse providing payroll funding and workers' compensation insurance, it also has entered into an asset purchase agreement (the "APA") with the Debtor wherein Diverse seeks to purchase substantially all of the assets of the Debtor. A copy of the APA is attached, incorporated by reference and marked as **Exhibit "B"**.

6. The Debtor believes that a sale of substantially all of its assets (the "Assets") as contemplated by the Motion and the APA will maximize the value of the estate. While the exact Assets that will be sold are dependent upon the entry of a final order approving the Motion, the Debtor seeks authority to sell substantially all of its Assets, as they are listed, included and defined in the APA.

7. The Debtor believes that in the event the Motion is approved, the result will be a successful sale of the Debtor's Assets.

8. Accordingly, the Debtor at this time seeks authority to sell the Assets.

9. In addition to the relief set forth above, upon a hearing with respect to the Motion,

the Debtor requests entry of an order that will, *inter alia,* (i) find that the buyer(s) of the Assets has bid, negotiated and purchased in good faith, and (ii) waive any stays, if they exist, set forth in the Bankruptcy Rules so the sale can be closed as soon as possible.

10. A prompt sale of the Assets will likely enable the Debtor to realize good value for the Assets. The Debtor believes that the terms and conditions set forth in the Motion, and in the APA, are fair and equitable to all interested purchasers and the Debtor, and thus reflect a transaction that will ultimately result in a successful sale of the Debtor's Assets. The Debtor believes that any material delay in consummating the proposed sale of the Assets will result in a reduction in the value of the Debtor's Assets. In fact, the APA calls for a closing of the sale of Assets in mid-March, which the Debtor does not believe that it will be able to accomplish. However, that deadline in the APA is an indication of the urgent need to have an order entered approving the Motion as soon as practicable. Further, the service agreement that the Order Approving Service Agreement actually approved terminates within thirty (30) days from the execution thereof. Absent an extension of the service agreement, the Debtor will have no funds to operate its business with respect to the payment of payroll or the obtaining of workers' compensation insurance.

11. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides, in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

12. Although section 363 of the Bankruptcy Code does not specify a standard for

determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the second business judgment of the debtor. *See, e.g., In re Trans World Airlines, Inc.,* Case No. 01-00056, 2001 WL 1820326, at *10-11 (Bankr.D.Del. Apr, 2, 2001); *Meyers v. Martin(In re Martin)*, 901 F.3d 389, 395 (rd Cir. 1996).

13. Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Del. & Hudson Ry.,* 124 B.R. at 176. In *In re Del. & Hudson Ry.,* the court further held that:

> [o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the [proposed] purchaser is proceeding in good faith.

124 B.R. at 176.

14. The business judgment rule shields a debtor's management from judicial second guessing. *See In re Tower Air,* 416 F.3d 229, 238 (3d Cir. 2005). Once a debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company." *Id.* Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

15. A sound business purpose for the sale of a debtor's assets outside the ordinary

course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. *See, e.g., In re Lionel Corp.*, 722 F.2d 1063,1071 (2nd Cir. 1983). In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 56465 (8th Cir. 1997) (noting that in bankruptcy sales, "a primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. at 659 ("It is a well established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124,130 (Bankr. N.D. Ga. 1988)). Here, in light of the Debtor's current condition, and prior orders requiring the Debtor to sell the Assets, no further justification is needed.

16.   The Debtor submits that it is abundantly clear that the Assets must be sold by private sale, and the business justifications for the requested sale are self-evident. Debtor has no funds with which to pay its employees, and no ability to obtain, or to fund the purchase of, workers' compensation insurance. In the absence of payroll funding and/or workers' compensation, the Debtor must close and well over one thousand people will be out of work.

17.   As further assurance of value, the Debtor engaged Seiler Tucker as its Mergers and Acquisitions Master Intermediary Broker (the "Broker") on August 11, 2017. The Debtor's Broker testified, at the hearing on the Motion to Approve Service Agreement, that she had received well over one hundred non-disclosure agreements, she had obtained a number of letters of intent, she had worked diligently to advertise and market the business for sale, and the only viable, executed APA is the APA attached as Exhibit "B". Consequently, the fairness and

reasonableness of a sale, considered in this case in light of the "market exposure" of the Assets is apparent.

18. The Debtor further submits that it is appropriate to sell the Assets free and clear and to assign the contracts and leases free and clear of (i) any Permitted Encumbrances or (ii) any permitted Liens, with any such Liens attached to the net sale proceeds of the Assets, as and to the extent applicable. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interests;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
(4) such interest is in *bona fide* dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

19. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of Liens. *In re Decora Indus., Inc.,* Case No. 004459 (JJF), 2002 WL 32332749, at *7 (D. Del. May 20, 2002) ("Because § 363(f) is drafted in the disjunctive, the satisfaction of any of the requirements outlined is sufficient to warrant Debtors' sale of the Debtor's assets free and clear of all Interests as provided in the APAs, except with respect to such Interests as are assumed liabilities pursuant to the APA Agreements").

20. The Debtor believes that one or more of the tests of section 363(f) of the Bankruptcy Code are satisfied with respect to the transfer of the Assets and the assignment of contracts and leases pursuant to the APAs. In particular, the Debtor believes that at least section 363(f)(2) of the Bankruptcy Code will be met in connection with the transactions proposed under

the APAs because each of the parties holding liens on the Assets, if any, will consent, or, absent any objection to this Motion, will be deemed to have consented to, the Motion.

21. Any holder of a lien also will be adequately protected by having its liens, if any, attach to the sale proceeds received by the Debtor for the sale of the Assets to the successful bidder at the Auction, in the same order of priority, with the same validity, force, and effect that such creditor had prior to such sale, subject to any claims and defenses that the Debtor and its estate may possess with respect thereto. Accordingly, section 363(f) of the Bankruptcy Code authorizes the sale of the Assets and the assignment of the contracts and leases free and clear of any such Liens.

22. Diverse, purchaser of the Assets, shall not be liable for any of the Debtor's liabilities as a successor or otherwise, unless Diverse expressly assumes such liabilities as provided for in the APA, further order of this Court or further agreement. Extensive case law exists providing that claims against the purchaser in a bankruptcy sale of assets is directed to the proceeds of a free and clear sale of property and may not subsequently be asserted against a buyer.

23. Although section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined in the Bankruptcy Code. *Folger Adam Security* v. *DeMatteis/MacGregor .IV,* 209 F.3d 252, 257 (3d Cir. 2000). In *In re Trans World Airlines, Inc.,* the Third Circuit specifically addressed the scope of the term "any interest." 322 F.3d 283, 28889 (3d Cir. 2003). The Third Circuit observed that while some courts have "narrowly interpreted interests in property to mean *in rem* interests in property," the trend in modern cases is toward "a more expansive reading of 'interests in property' which

'encompasses other obligations that may flow from ownership of the property.'" *Id.* at 289 (citing 3 *Collier on Bankruptcy* 1363.06[1]).

24.  Courts have held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability resulting from preexisting claims. *See The Ninth Ave. Remedial Group* v. *Allis-Chalmers Corp.*, 195 B.R. 716, 732 (N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 837 F.2d 89, 9394 (2d Cir. 1988) (holding channeling of claims to proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *In re New England Fish Co.,* 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982) (holding transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtor's employees); *In re Hoffman,* 53 B.R. 874, 876 (Bankr. D.R.I. 1985) (holding that transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes was permissible).

25.  Here, this Chapter 11 Case was filed in good faith. The sale process has also been, and will be, conducted in good faith and at arm's length. The Debtor expects that if the Court approves a sale of the Assets, it will be able to satisfy the Court that (a) the purchaser engaged in arm's length negotiations with the Debtor and did not exert control or undue influence over the Debtor, (b) the purchaser is a completely and wholly unrelated entity to the Debtor, (c) the purchaser does not, and will not, share any common incorporators, officers, directors, or stockholders with the Debtor, and (d) the purchaser is not an insider of the Debtor.

26.  For obvious reasons, the very purpose of an order purporting to authorize the

transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's presale conduct. Furthermore, the Debtor will provide notice of the proposed sale to all known parties in interest that may assert claims or interests relating to the Assets against the Debtor, including trade creditors, contract counterparties, lenders, and other parties known to the Debtor to be asserting claims relating to the Assets.

27.     Under section 363(f) of the Bankruptcy Code, a purchaser of assets is entitled to know that the Assets are not subject to latent claims that will be asserted against the purchaser after the proposed transaction is completed. Accordingly, consistent with the above cited case law, the order approving the sale of the Assets may provide that the purchaser of the Assets is not liable as a successor under any theory of successor liability, for claims that encumber or relate to the Assets.

28.     The Debtor believes that the APA has been negotiated at arm's length and in good faith. Thus, Diverse is entitled to the full protections of section 363(m) of the Bankruptcy Code.

29.     Accordingly, absent a showing of fraud, collusion between a purchaser and a debtor, or an attempt by the purchaser to take grossly unfair advantage of other bidders, courts will uphold the transaction under section 363(m) of the Bankruptcy Code. *See, e.g., In re Trans World Airlines, Inc.*, Case No. Civ. A. 01226 (SLR), 2002 WL 500569, *1 (D. Del. Mar. 26, 2002) (upholding bankruptcy court's ruling premised on finding that there was 'no evidence of unlawful insider influence or improper conduct,' nor was there "any evidence of fraud or collusion between [the prevailing purchaser] and [debtors], or [the prevailing purchaser] and other bidders," that sale was in good faith); *see also Kabro Assocs. of West Islip, LLC. v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111. F.3d 269, 276 (2d Cir. 1997) ("Typically, the

misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.")

30. Other grounds to be assigned upon a hearing hereof.

WHEREFORE, PREMISES CONSIDERED, the Debtor prays that upon a hearing hereof, this Honorable Court will enter its Order granting the Motion and authorizing Clay Dial or Jewel Bunch to execute such instruments of transfer as commercially reasonable and necessary to consummate and effectuate the contemplated transaction hereunder, and that the Court will approve the sales of the Assets free and clear of liens, claims, encumbrances and interests. The Debtor prays for general relief.

DATED, this the 5th day of March, 2018.

Respectfully submitted,

SWIFT STAFFING HOLDINGS, LLC

By Its Attorneys,

LAW OFFICES OF CRAIG M. GENO, PLLC

By: _____
Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Jarret P. Nichols; MSB No. 99426
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
jnichols@cmgenolaw.com

## CERTIFICATE OF SERVICE

    I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission, a true and correct copy of the above and foregoing to the following:

Sammye S. Tharp, Esq.
Sammye.S.Tharp@usdoj.gov

THIS, the 5th of March, 2018.

_____
Craig M. Geno